**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NEW YORK PIZZERIA, INC. | § | **CIVIL ACTION NO.**_____ |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| ROMI OVIEDO OF PEARLAND, L.L.C. | § | |
| And GUILLERMO SIERRA, | § | |
| *Defendants.* | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND APPLICATION FOR TEMPORARY INJUNCTION**

---

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiff, New York Pizzeria, Inc. (referred to herein as "Plaintiff" or "Russo's" or "Russo's"), and files its Original Complaint, Application for Temporary Restraining Order and Application for Temporary Injunction complaining of Defendants, Romi Oviedo of Pearland, L.L.C. (a/k/a Romi Oviedo, L.L.C.) and Guillermo Sierra, Individually (collectively referred to herein as "Defendants"), and in support would respectfully show this Court the following:

**I.**

**PARTIES**

1.     Plaintiff, New York Pizzeria, Inc. is a Texas corporation doing business in Harris County, Texas.

2.     Defendant, Romi Oviedo of Pearland, L.L.C. (a/k/a Romi Oviedo, L.L.C.) is a Texas limited liability company doing business in Harris County, Texas, and may be served by

and through its registered agent, Guillermo Sierra, 1826 Country Place Pkwy, Suite 102, Pearland, Texas 77584.

  3.  Defendant, Guillermo Sierra, is a Texas resident doing business in Harris County, Texas, and may be served at his principal place of business, 1826 Country Place Pkwy, Suite 102, Pearland, Texas 77584.

## II.

## JURISDICTION & VENUE

  4.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1338 as Plaintiff's predominate claim is under the Lanham Act, 15 U.S.C. §1051 *et seq.*

  5.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## III.

## FACTUAL BACKGROUND

  6.  Russo's operates a franchise system known as Russo's, and within the Russo's brand there are two concepts, "Russo's New York Pizzeria" and "Russo's Coal-Fired Italian Kitchen." There are over 40 "Russo's" locations across the United States and internationally. Russo's is owned by its founder and CEO, Gerardo Anthony Russo ("Anthony"), who has been using the Russo's marks, logos and advertising since 1991.

  7.  In order to protect continued and future use of the "New York Pizzeria," marks, Anthony, by and through his first company, Café Anthony, Inc. ("CAI"), registered "NEW YORK PIZZERIA" with the Texas Secretary of State on March 14, 1997, and obtained registration number 5646317. In 1998, Anthony incorporated Russo's with the Texas Secretary

of State, and licensed the use of the name Russo's New York Pizzeria and Russo's Coal Fired Italian Kitchen to Russo's. The Texas Trademark Registration for "New York Pizzeria" belonging to CAI was licensed to Russo's on or about August 29, 2002.

8.     To protect its significant investment in its franchise system, Russo's obtained the following Federal Trademarks (see attached Exhibit A, incorporated herein as if fully described):

   a.  "NEW YORK PIZZERIA" with a drawing of Lady Liberty (or hand holding a torch) to the top left of the name "New York Pizzeria" which is on the register of the United States Patent and Trademark Office, Serial Number 75770978 and Registration Number 2460980 (filed on October 30, 1999 and registered on June 19, 2001);

   b.  "RUSSO'S NEW YORK" which is on the register of the United States Patent and Trademark Office, Serial Number 77528804 and Registration Number 3682123 (filed on July 22, 2008 and registered on September 15, 2009);

   c.  "RUSSO'S NEW YORK COAL-FIRED PIZZERIA" which is on the register of the United States Patent and Trademark Office, Serial Number 77528831 and Registration Number 3682125 (filed on July 22, 2008 and registered on September 15, 2009);

   d.  "RUSSO'S NEW YORK PIZZERIA" which is on the register of the United States Patent and Trademark Office, Serial Number 85082850 and Registration Number 4008488 (filed on July 12, 2010 and registered on August 9, 2011);

   e.  "RUSSO'S NEW YORK PIZZERIA FRESH ITALIAN. AL DENTE!" which is on the register of the United States Patent and Trademark Office, Serial

Number 77528820 and Registration Number 3682124 (filed on July 22, 2008 and registered on September 15, 2009);

f.  the Logo "RUSSO'S NEW YORK PIZZERIA," with a curved red rectangular-shaped background with a white line border, which is on the register of the United States Patent and Trademark Office, Serial Number 85209818 and Registration Number 4005959 (filed on January 4, 2011 and registered on August 2, 2011); and

g.  the Logo "RUSSO'S COAL-FIRED ITALIAN KITCHEN," with a black rectangular-shaped background with a white line border, which is on the register of the United States Patent and Trademark Office, Serial Number 85209845 and Registration Number 4005961 (filed on January 4, 2011 and registered on August 2, 2011).

9.      Russo's, it's predecessor CAI, and Anthony have spent an incredible amount of money, and a significant amount of time and effort in developing, maintaining and increasing the business of Russo's restaurants. For instance, Russo's currently spends $10,000 to $15,000 per month on advertising, $5,000 per month on public relations and $3,500 per month on branding. In 2015 alone, Russo's spent well over $100,000 in developing the Russo's brand and enhancing the look of all Russo's restaurants. The local advertising purchased by Russo's includes (but is not limited to) the following: flyers, direct mail, coupons, yellow pages, newspapers (including the Houston Press, Wall Street Journal), radio, cable television, website development, brand development and billboards. Additionally, Russo's has sought to obtain customers from other cities in Texas by advertising in magazines (such as QSR, Entrepreneur, INC. 500, Intown, H Texas), American Express corporate cardholder promotions, travel guides, convention

guides/brochures, concierge services in hotels, as well as the internet (www.nypizzeria.com, www.citysearch.com and www.b4-u-eat.com).

10.     Russo's is also very active in the Houston community by participating in local charity events such as: Feast with the Beast (Houston Zoo), Natural Museum of Science, Houston Neighborhood Outdoor Festivals, Sienna Walk, Galveston Outdoor Festival, etc. Russo's believes strongly in giving back to the community that has supported it over the years.

11.     Russo's restaurants also are included nationally distributed restaurant guides such as Zagat's.  Such advertising and promotion works because the Russo's restaurants franchised by Russo's have enjoyed sustained increases in business and they frequently are visited by tourists and out-of-towners.  Russo's also spends about $2,000.00 per month on social media, including but not limited to, Facebook, Google, Groupon, etc.

12.     Russo's has also spent incredible amount of money to expand its brand awareness by reaching over to the retail consumer side and launching its own Russo's Gluten-Free Frozen Pizza line, which is currently in over 2000 stores all across the United States.  Expanding the local and national retail consumer's awareness of the Russo's brand directly benefits all current and future Russo's restaurants.

13.     The advertising purchased by Russo's is not only intended to entice potential customers to the restaurants, it also is intended to interest potential franchisees.  The more franchisees that join Russo's, the bigger/stronger the brand becomes and each current Russo's franchisee benefits from this increased public awareness.

14.     As such, Russo's has been a licensed franchisor in Texas since 1998, and it has successfully granted franchise rights since 2000.  In addition to the aforementioned advertising, Russo's has spent an incredible amount of money retaining business brokers and other entities to

assist it to promote and sell Russo's franchises in Texas, the United States and across the Globe. Russo's has spent substantial money, time and effort into franchising its restaurant concepts, recipes and goodwill to others throughout Russo's zone of natural expansion in Texas, the southern region of the United States and the Middle East.   In addition to Houston, Texas, Russo's has locations that exist or that are in development in the following cities:

    a.  Galveston, Texas

    b.  The Woodlands, Texas

    c.  Richmond, Texas

    d.  Sugar Land, Texas

    e.  Missouri City, Texas

    f.  Bellaire, Texas

    g.  League City, Texas

    h.  Pearland, Texas

    i.  Corpus Christi, Texas

    j.  McAllen, Texas

    k.  Richardson, Texas

    l.  Austin, Texas

    m.  Tulsa, Oklahoma

    n.  San Antonio, Texas

    o.  Germantown, Tennessee

    p.  Pembroke Pines, Florida

    q.  Dubai, United Arab Emirates

    r.  Abu Dhabi, United Arab Emirates

    s.  Honolulu, Hawaii

    t.  Tampa, Florida

    u.  Brownsville, Texas

    v.  Riyadh, Kingdom of Saudi Arabia

    w.  South Padre Island, Texas

    x.  Mission, Texas

    y.  Laredo, Texas

    z.  Cypress, Texas

    aa. Pflugerville, Texas

15.    Furthermore, Russo's has made significant investment in expanding the New York Pizzeria and Coal-Fired Italian Kitchen brand name and concepts. Russo's, at an incredible expense, attends and presents the New York Pizzeria and Coal-Fired Italian Kitchen concepts at trade shows all over the world (literally), including but not limited to the following:

    a.  Miami, Florida

    b.  Las Vegas, Nevada

    c.  Chicago, Illinois

    d.  Dubai, United Arab Emirates

    e.  Houston, Texas

    f.  San Antonio, Texas

    g.  Dallas, Texas

    h.  New York, New York

    i.  Shanghai, China

    j.  San Salvador, El Salvador

      k.   Guatemala City, Guatemala

      l.   San Jose, Costa Rica

      m.  Manilla, Philippines

      n.   Taipei, Taiwan

      o.   Guangzhou, China

      p.   Fuzhou, China

      q.   Paris, France

16.    Russo's not only shows the New York Pizzeria concept at these national and international shows, but then also brings potential franchisees to Houston, Texas to tour the many locations Russo's has in Houston, Texas, including the former Pearland Location, for potential expansion.

17.    About ten years ago, Defendants undertook the same efforts.  Defendants approached Russo's about becoming a franchisee.  Defendants toured Russo's New York Pizzeria concepts.  Having already been a franchisee in the restaurant industry in another concept for 2 years, Defendants decided to join the Russo's family of restaurants and purchased franchise rights for a New York Pizzeria franchise concept located at 1826 Country Place Pkwy, Suite 102, Pearland, Texas 77584 (the "Pearland Location").  On May 4, 2006, Defendants executed the Franchise Agreement attached hereto as Exhibit B and incorporated herein as if fully described (the "Franchise Agreement").  The term of the Franchise Agreement was for 10 years.

18.    On December 4, 2015, Russo's contacted Defendants and informed them that their franchise rights under the Franchise Agreement were due to expire on May 3, 2016 and that Russo's was giving Defendants the option to renew.  (See letter dated December 4, 2015 attached hereto as Exhibit C and incorporated herein as if fully described.)  In response to this

notice, Defendants informed Russo's that they intended to renew their franchise rights and requested assistance from Russo's to find a new location for Defendants to reopen Russo's at a new location. Russo's assisted Defendants for months in trying to find Defendants a new location to establish a Russo's restaurant. (See attached affidavit of Louie Bargach, attached hereto as Exhibit D and incorporated herein as if fully described.)

19.     On August 1, 2016, Defendants verbally notified Russo's that they decided to terminate their franchise rights for the Pearland Location. See attached Exhibit D.

20.     In response to Defendants' unilateral relinquishment of their franchise rights under their Franchise Agreement, on August 1, 2016, Russo's, by and through its counsel Joseph J. Hroch, accepted Defendants' notice and reminded Defendants of their obligations and responsibilities upon expiration of the Franchise Agreement. See letter dated August 1, 2016, attached hereto as Exhibit E and incorporated herein as if fully described.

21.     In its August 1, 2016 correspondence, Russo's requested, pursuant to the Franchise Agreement, that the following items be surrendered, assigned and/or turned over by Defendants to Russo's (See Exhibit E):

    a.  All Russo's training manuals and franchisee materials;
    b.  All documentation, print materials, paper products, proprietary products and information that contains the Russo's or New York Pizzeria logo;
    c.  All documentation and information related to the location's sales and revenue history;
    d.  All documentation and information related to the location's inventory order history;
    e.  All documentation and information related to the location's Russo's loyalty reward customer program history;
    f.  All rights to the location's facebook page and/or social media for the location;
    g.  All rights to the phone numbers (telephone and facsimile) of the location;
    h.  The rights to a directory listings of the location;
    i.  All rights to the facsimile numbers of the location;
    j.  All rights to the e-mail address for the location;
    k.  An itemized list of all materials, inventory, equipment and products; and

l. All files on any computer in your possession related to the location, its business, its sales history, its customers, its financial performance and all customer contact information.

22. While accepting Defendants' unilateral relinquishment of their franchise rights, Russo's also reminded Defendants of their covenants, obligations and responsibilities that Defendants have under the Franchise Agreement upon expiration of same. (See Exhibit E)

23. Russo's continued by reminding Defendants as to the following obligations and covenants related to Defendants continuing to be in business after the termination or expiration of the Franchise Agreement (See Exhibit E):

*..Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and confidential information, including, without limitation, information regarding the operational, sales, promotional and marketing methods and techniques of New York Pizzeria and the System as well as other confidential information set forth and defined above as Proprietary Information...*

**Franchisee covenants that, except as otherwise approved in writing by NEW YORK PIZZERIA, Franchisee shall not, during the term of this Agreement and for a continuous uninterrupted period commencing upon the expiration or termination of this Agreement, regardless of the cause for termination, and continuing for two (2) years thereafter, either directly or indirectly for itself or through, on behalf of, or in conjunction with, any person, persons, or legal entity, own, maintain, operate, engage in, be employed by, or have any interest in any restaurant business featuring the overall NEW YORK PIZZERIA concept, with similar décor or similar menu items to NEW YORK PIZZERIA restaurants within a five (5) mile radius of the restaurant location designated hereunder, or within a five (5) mile radius of any other NEW YORK PIZZERIA Restaurant in existence or planned as of the time of termination or expiration of this Agreement, as identified in the Franchisor Offering Circular of NEW YORK PIZZERIA in effect as of the date of expiration or termination of this Agreement.**

24. Russo's had no issue with Defendants' decision to terminate its franchise rights or wanting to go in another direction for a restaurant concept. In fact, to facilitate the relinquishment of the franchise rights, Russo's sent Louie Bargach to Defendants' location on August 2, 2016 to ensure compliance with the Franchise Agreement.

25.     However, on August 2, 2016, Defendants did not cease their operations as New York Pizzeria and continued to operate the restaurant as New York Pizzeria.  See Exhibit D.

26.     Defendants have ignored Russo's demands and refuse to comply with their covenants, obligations and responsibilities detailed under the Franchise Agreement.  See Exhibit D.

27.     On August 2, 2016, Russo's investigated into Defendants' operation and was completely blown away that not only did Defendants continue operating the location as pizzeria, but that nothing, other than New York Pizzeria's name on the paper menu, had changed. Defendants operations included the same menu items, same decor, same phone number, same Point of Sale stations, same receipts, same outdoor signage, same everything.  In fact, Donnie Mixon contacted the location at the New York Pizzeria phone number (713-436-2447) and Defendants answered "New York Pizzeria." Mr. Mixon asked Defendants if they were "Russo's" and Defendant, Guillermo Sierra, confirmed by saying "Yeah."  Mr. Mixon continued by asking Defendants if they were the closest Russo's to the Friendswood area and Defendant, Guillermo Sierra, confirmed that they were.  See affidavit of Donnie Mixon, attached hereto as Exhibit F and incorporated herein as if fully described.

28.     Mr. Mixon placed an order for 5 "Party Pizzas," which are the 28-inch pizzas Russo's created as a marketing niche in its business.  The order was taken with no problem.  (See Exhibit F)

29.     Of the 5 "Party Pizzas," Mr. Mixon ordered two – "Mulberry," which is a name created by Chef Anthony Russo for a type of pizza that only Russo's offers, two – "New York Village," which is another name created by Chef Anthony Russo for a type of pizza that only

Russo's offers, and one – Cheese and Pepperoni.  The order was taken by Defendant, Guillermo Sierra, without question and with no problem.  (See Exhibit F)

30.     When Mixon went charged the pizza order on August 2, 2016 on his American Express card, Russo's was surprised again that nothing had changed on the <u>transaction detail on the credit card statement, which said the business name was "New York Pizzeria"</u>.  (See Exhibit F-1)  Defendants were still using the Russo's proprietary Point of Sale ("POS") system, as well as a credit card account in the name of New York Pizzeria.  (See Exhibit F-1)

31.     Mr. Bargach performed an investigation into Defendants' operations by physically visiting the Pearland Location on August 1, 2016.  Upon arrival, he notified the staff who he was and discovered the following:

    a.  The Defendants were continuing to conduct themselves as a pizza, pasta and Italian food fast casual restaurant (See attached Exhibit D, which is the affidavit of Mr. Bargach along with the photographs taken by Mr. Bargach on August 1, 2016 and incorporated herein as if fully described);

    b.  New York pictures were still up on the walls (See attached Exhibit D);

    c.  "New York Pizzeria" was still being advertised as the business name (See attached Exhibit D);

    d.  Russo's trade dress, style and design still remained (See Exhibit D);

    e.  The credit card transaction detail being reported to customers was still describing the restaurant as "New York Pizzeria" (See Exhibit F-1);

    f.  The Defendants are using the exact same "New York Pizzeria" signage outside the restaurant that had been there for the past decade (See Exhibit D).

g.  The store was using Russo's confidential and proprietary ingredients and sourced products (See Exhibit D);

h.  Defendants were using Russo's logo pizza slice boxes (See Exhibit D);

i.  The menu items being offered by Defendants were similar menu items to the Russo's menu in selection, ingredients and format (See Exhibit D);

j.  Defendants' menu items for calzones were similar to Russo's both in name and description (See Exhibit D);

k.  Defendants' menu items for salads were similar to Russo's both in name and description (See Exhibit D);

l.  Most of Defendants' menu items for specialty pizzas are similar to Russo's specialty pizzas (See Exhibit D);

m.  Defendants method of operation and appearance were no different than its previous operation as a New York Pizzeria (See Exhibit D); and

n.  Defendants were still operating under the sales tax permit, TABC license and all other restaurant licenses in the name of New York Pizzeria (See Exhibit D);

32.  Mr. Bargach spoke with Defendant, Guillermo Sierra, and was told, in response to his request that Defendants cease their operation that Defendants intend to operate the restaurant as a pizzeria until they can sell it and believe they can get $100,000.00 for the business.  (See Exhibit D)

## IV.

## CAUSES OF ACTION / REQUESTED RELIEF

### A.  TRADEMARK INFRINGEMENT UNDER FEDERAL COMMON LAW AND THE LANHAM ACT

33.     Defendants have violated both federal common law and the Lanham Act, 15 U.S.C. § 1051, et seq., which prohibits person and entities from using names, words, symbols or other devices to cause deception or the likelihood of confusion with a protected trademark. Russo's has a common law trademark right to "New York Pizzeria" and possible other marks that are entitled to protection for Plaintiff's exclusive use in Texas, including Harris County. Russo's and its predecessors, Anthony and CAI, used "New York Pizzeria" for years prior to any use by Defendants, and Russo's predecessor, CAI, registered "New York Pizzeria" as a trademark in Texas years before Defendants joined the Russo's franchise system. As used by Russo's, "New York Pizzeria" constitutes a descriptive mark that has acquired secondary meaning over many years of use by Russo's.

34.     As a result of Russo's advertising, referrals and business since 1991, when many people in the Houston metropolitan area read or hear the phrase "New York Pizzeria" they think of Russo's food and services. Defendants infringed upon such trademark by using the "New York Pizzeria" name after they unilaterally relinquished their franchise rights. Defendants' actions, as described above, are intentionally confusing to consumers and allow consumers to believe that they are dealing with Russo's or its franchisees. As a result of such misconduct, there is a likelihood of confusion between Russo's trademarks and that of its competitor.

35.     Moreover, Russo's has spent significant time and effort filing and receiving the Trademarks detailed above.

36.     As a result of the infringement on its trademark, Russo's has suffered damages. Such damages should be based upon a disgorgement of Defendants' wrongful profits enjoyed as a result of the trademark infringement. Alternatively, such damages may be based upon the franchise and royalty fees that should have been paid by Defendants to start a new franchise right

under Russo's, use Russo's trademarks, trade name, trade dress and trade secrets. The franchise and monthly royalty fees for a Russo's New York Pizzeria are currently $49,500.00 and 7%, respectively. Further, insofar as the aforementioned conduct of Defendants was willful and motivated by malice, fraud or conscious disregard to the rights and welfare of Russo's and its franchisees, Russo's asserts that it is entitled to recover exemplary damages as well as its reasonable and necessary attorney's fees incurred to prosecute this action against Defendant. In addition to actual, injunctive, declaratory, equitable and exemplary damages requested above (plus attorney's fees), Russo's would show that it is entitled to recover prejudgment and post-judgment interest as allowed by law and all costs of court.

37. Moreover, the Franchise Agreement provides the following injunctive relief and liquidated damages to be given and awarded to Russo's for Defendants' breach of their non-compete obligations following the expiration of the Franchise Agreement:

> ... in the event of any breach, or of any threatened or attempted breach of (you) of the restrictions herein contained, it is agreed that in addition to all other legal remedies, (NYPI) shall also have the right to obtain an injunction prohibiting such violation in commanding compliance with the restrictions herein contained. (You) further agrees that for the purpose of any such injunction proceeding, it shall be presumed that (NYPI's) legal remedies would be inadequate and that (NYPI) would suffer irreparable harm as a result of (your) violation of the provisions of this (Franchise Agreement);

> ... the restrictive covenants set forth above are reasonable in scope and are reasonably necessary to protect (NYPI's) business and the valuable and extensive trade which it has established through its own expense and effort; and

> ... (You) acknowledge(s) the devastating harm which could befall (NYPI's) business should (you) breach the terms of this non-compete provision and accordingly, in addition to the other remedies provided herein, agrees to the sum of $50,000.00 as liquidated damages should (you) breach said provision...

## B. Unfair Competition under Federal Common Law and the Lanham Act

38.     Russo's further would show that the aforementioned conduct of Defendants constitutes unfair competition under federal common law as well as the Lanham Act. As used by Russo's, "New York Pizzeria" constitutes a suggestive mark, or at a minimum, it constitutes a descriptive mark that has acquired secondary meaning over many years of use by Russo's in Houston (as well as Harris County, Fort Bend County and Texas). Defendants' use of "New York Pizzeria" was calculated to deceive ordinary consumers into purchasing food and/or services from Defendants.

39.     As a result of the unfair competition, Russo's has suffered damages. Such damages should be based upon a disgorgement of Defendants' wrongful profits enjoyed as a result of the unfair competition. Alternatively, such damages may be based upon the franchise and royalty fees that should have been paid by Defendants to start a new franchise right under Russo's, use Russo's's trademarks, trade name, trade dress and trade secrets. The franchise and monthly royalty fees for a Russo's New York Pizzeria are currently $49,500.00 and 7%, respectively. Further, insofar as the aforementioned conduct of Defendants was willful and motivated by malice, fraud or conscious disregard to the rights and welfare of Russo's and its franchisees, Russo's asserts that it is entitled to recover exemplary damages as well as its reasonable and necessary attorney's fees incurred to prosecute this action against Defendant. In addition to actual, injunctive, declaratory, equitable and exemplary damages requested above (plus attorney's fees), Russo's would show that it is entitled to recover prejudgment and post-judgment interest as allowed by law and all costs of court.

40.     Moreover, the Franchise Agreement provides the following injunctive relief and liquidated damages to be given and awarded to Russo's for Defendants' breach of their non-compete obligations following the expiration of the Franchise Agreement:

*... in the event of any breach, or of any threatened or attempted breach of (you) of the restrictions herein contained, it is agreed that in addition to all other legal remedies, (NYPI) shall also have the right to obtain an injunction prohibiting such violation in commanding compliance with the restrictions herein contained.   (You) further agrees that for the purpose of any such injunction proceeding, it shall be presumed that (NYPI's) legal remedies would be inadequate and that (NYPI) would suffer irreparable harm as a result of (your) violation of the provisions of this (Franchise Agreement);*

*... the restrictive covenants set forth above are reasonable in scope and are reasonably necessary to protect (NYPI's) business and the valuable and extensive trade which it has established through its own expense and effort; and*

*... (You) acknowledge(s) the devastating harm which could befall (NYPI's) business should (you) breach the terms of this non-compete provision and accordingly, in addition to the other remedies provided herein, agrees to the sum of $50,000.00 as liquidated damages should (you) breach said provision...*

## C. BREACH OF CONTRACT

41.     Defendants have breached their Franchise Agreement with Russo's.  Most notably and foremost, after Defendants relinquished their franchise rights effective August 1, 2016, Defendants were obligated under the Franchise Agreement (See Exhibit B):

*A)...(Defendants) further agree(s) that, upon termination or expiration of this (Franchise Agreement), (Defendants) shall immediately and permanently cease to use, by advertising, or any manner whatsoever, any confidential methods, procedures, descriptions of products, and techniques associated with (NYPI) and the Names and Marks and any proprietary marks and distinctive forms, slogans, symbols, signs, logos or devices associated with the System. In particular, (Defendants) shall cease to use, without limitation, all signs, advertising materials, stationary, forms, and any other articles which display the Names and Marks.  (Defendants) shall comply with the covenant not to compete and the agreement to maintain the confidentiality of proprietary information...*

*B)... (Defendants) shall immediately cease to operate the Business under this (Franchise Agreement), and shall not thereafter, directly or indirectly, represent itself to the public or hold itself out as a present or former Franchisee of (NYPI)...*

C)... (Defendants) agree(s), in the event it continues to operate or subsequently begins to operate any other business, not to use any reproduction, counterfeit, copy or colorable imitation of the Names and Marks, either in connection with such other business or in the promotion thereof, which is likely to cause confusion, mistake or deception, or which is likely to dilute (NYPI's) exclusive rights in and to the Names and Marks, and further agrees not to utilize any designation of origin or description or representation which falsely suggest or represents an association or connection with (NYPI) or a former association or connection with (NYPI)...

D)... (Defendants) further agree(s) that upon termination or expiration of this Agreement, it will take such action that may be required to cancel all assumed names or equivalent registrations relating to its use of any Names or Marks and to notify the telephone company and listing agencies of the termination or expiration of (Defendants) right to use any telephone number in any classified ad and any other telephone directory listings associated with the Names and Marks or with the Business and to authorize transfer of same to (NYPI). (Defendants) acknowledge(s) that as between (NYPI) and (Defendants), (NYPI) has the sole rights to and interest in all telephone number and directory listings associated with any Names or Marks of the Business. (Defendants) further authorize(s) (NYPI), and hereby appoint(s) (NYPI) as its attorney in fact, to direct the telephone company and all listing agencies to transfer same to (NYPI), should (Defendants) fail or refuse to do so, and the telephone company and all listing agencies may accept such direction in this (Franchise Agreement) as conclusive evidence of the exclusive rights of Franchisor in such telephone numbers and directly listings and its authority to direct their trainsfer...

E)... (Defendants) further agree(s) that upon termination or expiration of this (Franchise Agreement), it will immediately return to (NYPI) all copies of the Manual, training aids and any other materials which have been loaned to it by (NYPI). (Defendants) further agree(s) to turn over to (NYPI) any other manuals, computer programs, software, customer lists, records, files, instructions, correspondences and brochures, and any and all other confidential and proprietary materials relating to the operation of the Business in (Defendants) possession, custody, or control, and all copies thereof (all of which are acknowledged to be (NYPI's) property), and only (Defendants) copy of this Agreement and any correspondence between the parties, and any other document copies which (Defendants) reasonably need(s) for compliance with any provision of law may be retained by (Defendants)...

F)... (NYPI) shall have the right (but not the duty), to be exercised by notice of intent to do so within thirty (30) days after termination or expiration, to purchase any or all inventory, equipment, supplies, signs, advertising

> *materials and items bearing (NYPI's) Names and Marks, at a fair market value (less the amount of any outstanding liens or encumbrances)...*
>
> *G)... (Defendants) shall pay to (NYPI), within fifteen (15) days after the effective date of termination or expiration of this (Franchise Agreement), such Base Royalty Fees, National Fund contributions, payments for inventory, equipment or merchandise, or any other sums owed to (NYPI) by (Defendants), which are then unpaid. (Defendants) shall pay to (NYPI) all damages, costs, and expenses, including reasonable attorney's fees, incurred by (NYPI) in obtaining injunctive or other relief for the enforcement of any provisions of Section XIX...*

42.    Defendants are directly operating their "new" business in violation of this covenant not to compete. Defendants are utilizing all the confidential trade secrets, trade dress and procedures Defendants received from Russo's as franchisees. Russo's advised Defendants of this covenant immediately after Defendants decided to relinquish their franchise rights effective August 1, 2016, but Defendants have chosen to ignore this covenant. This covenant is of the utmost importance for Russo's. Without such covenant from Defendants, Russo's would have never disclosed all of Russo's confidential trade secrets, trade dress and procedures to Defendants.

43.    Additionally, Defendants agreed under the Franchise Agreement to (See Exhibit B):

> *...(Defendants) agrees, in the event it continues to operate or subsequently begins to operate any other business, not to use any reproduction, counterfeit, copy or colorable imitation of the Names and Marks, either in connection with such business or in the promotion thereof, which is likely to cause confusion, mistake or deception, or which is likely to dilute (Russo's)'s exclusive rights in and to the Names and Marks, and further agrees not to utilize any designation of origin or description or representation which falsely suggests or represents an association or connection with (Russo's) or a former association or connection with Franchisor...*
>
> *... during the term of this Agreement and for a period of two (2) years following the expiration or termination of this Agreement, (Defendants) covenant(s) that it will not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, or legal entity:*
>
> *1) Divert or attempt to divert business or customers of the Business with which or*

*with whom (Defendants) has had contact during the term of this (Franchise Agreement) to any competitor by direct or indirect inducement or otherwise; or*
*2) Do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Names and Marks or the System or both...*

*...(Defendants) acknowledge(s) that any failure to comply with the requirements of this Section XIX will cause Franchisor irreparable injury for which no adequate remedy at law may be available, and (Defendants) hereby accordingly consent(s) to the issuance by a court of competent jurisdiction of an injunction prohibiting any conduct by (Defendants) in violation of the terms of this Section XIX and waive(s) any requirement for the posting of any bond(s) relating thereto. (NYPI) may further avail itself of any legal or equitable rights and remedies which it may have under the (Franchise Agreement) or otherwise..*

44.   Everything Defendants are doing is a violation of the Franchise Agreement. Defendants are purposely deceiving the general public and trying to give them the sense that their "new" restaurant is still that same New York Pizzeria it always has been over these many years.  From having the signage display "New York Pizzeria," having Russo's pizza boxes, accepting Russo's coupons, not relinquishing the Russo's phone number, having receipts that are printed under New York Pizzeria's and keeping similar menu items.

45.   The Franchise Agreement also states (See Exhibit B):

*...(Defendants) shall immediately and permanently cease to use, by advertising, or any manner whatsoever, any confidential methods, procedures, descriptions of products, and techniques associated with (Russo's) and the Names and Marks and proprietary marks and distinctive forms, slogans, symbols, signs, logos or devices associated with the System. In particular, Franchisee shall cease to use, without limitation, all signs, advertising materials, stationery, forms, and any other articles which display the Names and Marks.  Franchisee shall comply with the covenant not to compete and the agreement to maintain the confidentiality of proprietary information. ...*

46.   "New York Pizzeria" and "Russo's" trademarks and names are still visible at the Pearland Location in an obvious attempt to deceive the general public.  Moreover, if a customer didn't know better, with Defendants' continued use of the Russo's proprietary POS system (printing out "New York Pizzeria" receipts), similar menu items, same trade dress and same recipes, any consumer would assume they are still ordering from New York Pizzeria.

47.    The Franchise Agreement also provides that (See Exhibit B):

*Franchisee further agrees that upon termination or expiration of this Agreement, it will take such action that may be required to cancel all assumed names or equivalent registrations relating to its use of any Names or Marks and to notify the telephone company and listing agencies of the termination or expiration of Franchisee's right to use any telephone number in any classified ad and any other telephone directory listings associated with the Names and Marks or with the Business and to authorize transfer of same to Franchisor. Franchisee acknowledges that as between Franchisor and Franchisee, Franchisor has the sole rights to and interest in all telephone numbers and directory listings associated with any Names or Marks of the Business. Franchisee further authorizes Franchisor, and hereby appoints Franchisor as its attorney in fact, to direct the telephone company and all listing agencies to transfer same to Franchisor, should Franchisee fail or refuse to do so, and the telephone company and all listing agencies may accept such direction in this Agreement as conclusive evidence of the exclusive rights of Franchisor in such telephone numbers and directory listings and its authority to direct their transfer.*

48.    The Defendants have failed and refuse to transfer the telephone numbers, directory listings, emails, etc. utilized by the Pearland Location to Russo's. The Defendants are continuing to use the telephone numbers that were advertised as a New York Pizzeria telephone numbers in the Pearland, Texas community for over a decade. Defendants answer the phone currently as "Pizzeria" in an obvious attempt to deceive the general public into thinking they are still a New York Pizzeria. See Exhibit D.

49.    The Franchise Agreement also provides that (See Exhibit B):

*Franchisee further agrees that upon termination or expiration of this Agreement, it will immediately return to Franchisor all copies of the Manual, training aids and any other materials which have been loaned to it by Franchisor. Franchisee further agrees to turn over to Franchisor any other manuals, computer programs, software, customer lists, records, files, instructions, correspondence and brochures, and any and all other confidential and proprietary materials relating to the operation of the Business in Franchisee's possession, custody, or control, and all copies thereof (all of which are acknowledged to be Franchisor's property), and only Franchisee's copy of this Agreement and any correspondence between the parties, and any other document copies which Franchisee reasonably needs for compliance with any provision of law may be retained by Franchisee.*

50.     The Defendants have failed and refuse to turnover Russo's proprietary POS system. Defendants are not only utilizing Russo's proprietary POS system, but also distributing receipts to customers that identify their business as "New York Pizzeria." The POS system maintains all of Russo's confidential and proprietary customer contact and order history information. The customer list, sales history and all related POS computer information that was created while Defendants operated the Pearland Location as a New York Pizzeria is confidential and proprietary property of Russo's and Defendants should not be allowed to maintain, keep or utilize this information in any way shape or form.

**D. MISAPPROPRIATION OF TRADE DRESS / TRADE SECRETS / CONFIDENTIAL INFORMATION**

51.     Defendants, while being a Russo's franchisee, discovered many trade secrets of Russo's, including (but not limited to) recipes, training, ingredients, strategies concerning purchasing and pricing, strategies concerning menus and marketing (including Russo's concepts and trade dress), the identity of vendors, the identity of suppliers who provided necessary goods and services to Russo's and its franchisees, and other highly proprietary and confidential information. The trade secrets and confidential information was acquired, compiled and/or prepared by representatives of Russo's, not generally known to its competitors, and it represented the most critical and proprietary information belonging to Russo's. Russo's has taken care to protect the secrecy of such information, and it is not disclosed to anyone but employees of Russo's or Russo's licensed franchisees.

52.     Defendants are copying the New York Pizzeria concept and misappropriating everything they learned from New York Pizzeria as franchisees. Defendants are stealing Russo's trade dress, trade secrets and confidential recipes/ingredients. Defendants are going so far as to keeping outdoor signage to make the general public think they are still the same New York

Pizzeria restaurant. Allowing Defendants to continue completely violates Russo's rights to its trade secrets, recipes, trade dress and confidential and proprietary information.

53.     Defendants' blatant use and disclosure of Russo's trade secrets, trade dress and confidential information constitutes a misappropriation and, as such, entitled Russo's to recover from Defendants all damages proximately caused by the same. Such damages should be based upon a disgorgement of Defendants' wrongful profits enjoyed as a result of the misappropriation of trade secrets and confidential information. Alternatively, such damages may be based upon the franchise and royalty fees that should have been paid by Defendants to start a new franchise right under Russo's, use Russo's trademarks, trade name, trade dress and trade secrets. The franchise and monthly royalty fees for a Russo's New York Pizzeria are currently $49,500.00 and 7%, respectively. Additionally, as a result of Defendants' misappropriation of trade secrets, trade dress and other confidential information, Russo's is entitled to recover punitive damages against Defendants, in addition to whatever actual and consequential damages to which Russo's may be entitled. Russo's also seeks recovery of prejudgment and post-judgment interest as allowed by law and all costs of court.

E.  **TRADEMARK INFRINGEMENT UNDER TEXAS COMMON LAW**

54.     Russo's has common law trademark, trade name and/or service mark (collectively referred to as "trademark") rights to "New York Pizzeria" and possibly other marks that are entitled to protection for Russo's exclusive use in and around Texas, including Harris County and all contiguous counties. Russo's and its predecessors, Anthony and CAI, used "New York Pizzeria" for years prior to any use by Defendants, and Russo's predecessor, CAI, registered "New York Pizzeria" as a trademark in Texas years before Defendants joined the Russo's

franchise system. As used by Russo's, "New York Pizzeria" constitutes a descriptive mark that has acquired secondary meaning over many years of use by Russo's.

55.     As a result of Russo's advertising, referrals and business since 1991, when many persons in the Houston metropolitan area read or hear the phrase "New York Pizzeria" they think of Russo's food and services. Defendants infringed upon such trademark by using the "New York Pizzeria" name after they unilaterally relinquished their franchise rights. Defendants' actions, as described above, are intentionally confusing to consumers and allow consumers to believe that they are dealing with Russo's or its franchisees. As a result of such misconduct, there is a likelihood of confusion between Russo's trademarks and that of its competitor.

56.     As a result of the infringement on its trademark, Russo's has suffered damages. Such damages should be based upon a disgorgement of Defendants' wrongful profits enjoyed as a result of the trademark infringement. Alternatively, such damages may be based upon the franchise and royalty fees that should have been paid by Defendants to start a new franchise right under Russo's, use Russo's trademarks, trade name, trade dress and trade secrets. The franchise and monthly royalty fees for a Russo's New York Pizzeria are currently $49,500.00 and 7%, respectively. Further, insofar as the aforementioned conduct of Defendants was willful and motivated by malice, fraud or conscious disregard to the rights and welfare of Russo's and its franchisees, Russo's asserts that it is entitled to recover exemplary damages as well as its reasonable and necessary attorney's fees incurred to prosecute this action against Defendant. In addition to actual, injunctive, declaratory, equitable and exemplary damages requested above (plus attorney's fees), Russo's would show that it is entitled to recover prejudgment and post-judgment interest as allowed by law and all costs of court.

## F. UNFAIR COMPETITION UNDER TEXAS COMMON LAW

57.     Russo's further would show that the aforementioned conduct of Defendants constitutes unfair competition under Texas common law.   As used by Russo's, "New York Pizzeria" constitutes a suggestive mark, or at a minimum, it constitutes a descriptive mark that has acquired secondary meaning over many years of use by Russo's in Houston (as well as Harris County and Texas).   Defendants' use of "New York Pizzeria" was calculated to deceive ordinary consumers into purchasing food and/or services from Defendants.

58.     As a result of the unfair competition, Russo's has suffered damages.   Such damages should be based upon a disgorgement of Defendants' wrongful profits enjoyed as a result of the unfair competition.   Alternatively, such damages may be based upon the franchise and royalty fees that should have been paid by Defendants to start a new franchise right under Russo's, use Russo's's trademarks, trade name, trade dress and trade secrets.   The franchise and monthly royalty fees for a Russo's New York Pizzeria are currently $49,500.00 and 7%, respectively.   Further, insofar as the aforementioned conduct of Defendants was willful and motivated by malice, fraud or conscious disregard to the rights and welfare of Russo's and its franchisees, Russo's asserts that it is entitled to recover exemplary damages as well as its reasonable and necessary attorney's fees incurred to prosecute this action against Defendant.   In addition to actual, injunctive, declaratory, equitable and exemplary damages requested above (plus attorney's fees), Russo's would show that it is entitled to recover prejudgment and post-judgment interest as allowed by law and all costs of court.

## G.  REQUEST FOR TEMPORARY RESTRAINING ORDER & TEMPORARY INJUNCTION

59.     For the reasons discussed herein, Russo's requests a Temporary Restraining Order and Temporary Injunction against Defendants.

60.     In the Franchise Agreement, Defendants agreed and acknowledged Russo's entitled to injunctive relief, without the posting of bond.   See Exhibit B.   Specifically, the Defendants agreed as follows:

> ... the foregoing covenants place no greater restraint upon (you) than is reasonably necessary to protect the business and goodwill of (NYPI);
> ...these covenants protect a legitimate interest of (NYPI) and do not serve solely to limit its future competition;
> ... this (Franchise Agreement) is not an invalid or unreasonable restraint of trade;
> ... a breach of this Section of this (Franchise Agreement) by (you) would cause immediate and irreparable damage to (NYPI);
> ... the execution of this (Franchise Agreement) is necessary to (you) doing business with (NYPI);
> ... in the event of any breach, or of any threatened or attempted breach of (you) of the restrictions herein contained, it is agreed that in addition to all other legal remedies, (NYPI) shall also have the right to obtain an injunction prohibiting such violation in commanding compliance with the restrictions herein contained.   (Defendants) further agrees that for the purpose of any such injunction proceeding, it shall be presumed that (NYPI's) legal remedies would be inadequate and that (NYPI) would suffer irreparable harm as a result of (your) violation of the provisions of this (Franchise Agreement);
> ... the restrictive covenants set forth above are reasonable in scope and are reasonably necessary to protect (NYPI's) business and the valuable and extensive trade which it has established through its own expense and effort; and
> ... (Defendants) acknowledge(s) the devastating harm which could befall (NYPI's) business should (you) breach the terms of this non-compete provision and accordingly, in addition to the other remedies provided herein, agrees to the sum of $50,000.00 as liquidated damages should (you) breach said provision...

61.     Russo's requests this Court to immediately issue a temporary restraining order prohibiting Defendants from taking any of the following actions:

   a.   using the trade name "New York Pizzeria" and/or "Russo's New York Pizzeria" and/or "Russo's" name in any signage, menus or other advertising;

   b.   using any of Russo's trade secrets or trade dress in Defendants' Pearland Location (including but not limited to, Russo's trade dress, appearance, look, artwork, recipes, ingredients and similar menu items);

    c. operating the Pearland Location as a pizzeria, which includes offering pizza, pasta, soups and salads, and featuring the overall New York Pizzeria concept, with similar décor or similar menu items;

    d. operating, either directly or indirectly, for themselves or through, on behalf of, or in conjunction with, any person, persons, or legal entity, own, maintain, operate, engage in, be employed by, or have any interest in any restaurant business featuring the overall New York Pizzeria concept, with similar décor or similar menu items to Russo's restaurants within a five (5) mile radius of the Pearland Location, or within a five (5) mile radius of any other Russo's restaurant in existence.

62.     Russo's further requests this Court enter a Temporary Restraining Order against Defendants and order Defendants to immediately turnover, assign, transfer or deliver to Russo's:

    a. All Russo's training manuals and franchisee materials;
    b. All documentation, print materials, paper products, proprietary products and information that contains the Russo's or New York Pizzeria logo;
    c. All documentation and information related to the location's sales and revenue history;
    d. All documentation and information related to the location's inventory order history;
    e. All documentation and information related to the location's Russo's loyalty reward customer program history;
    f. All rights to the location's facebook page and/or social media for the location;
    g. All rights to the phone numbers (telephone and facsimile) of the location;
    h. The rights to a directory listings of the location;
    i. All rights to the facsimile numbers of the location;
    j. All rights to the e-mail address for the location;
    k. An itemized list of all materials, inventory, equipment and products;
    l. All files on any computer in your possession related to the location, its business, its sales history, its customers, its financial performance and all customer contact information; and
    m. Order Defendants to pay for Plaintiff's reasonable attorney's fees incurred in seeking injunctive relief.

63.    It is essential that the Court act immediately (prior to a hearing on the matter in the event that Defendants' counsel cannot attend an immediate hearing) because Defendants' are: a) in breach of their covenants under the Franchise Agreement, b) infringing upon Russo's Trademarks, c) misappropriating Russo's trade name, trade dress and trade secrets d) creating a strong likelihood of confusion between the Russo's restaurants owned or franchised by Russo's and Defendants' new restaurant, e) using all the confidential and proprietary information Defendants received from Russo's and f) using Russo's confidential and proprietary POS system that gives receipts to consumers identifying the business as "New York Pizzeria."

64.    Defendants have already consented and agreed to the appropriateness of injunctive relief for Russo's as per Franchise Agreement, which states:

*...(Defendants) acknowledge(s) that any failure to comply with the requirements of this Section XIX. will cause (Russo's) irreparable injury for which no adequate remedy at law may be available, and (Defendants) hereby accordingly consent(s) to the issuance by a court of competent jurisdiction of an injunction of this Section XIX. and waives any requirement for the posting of any bond(s) relating thereto. (Russo's) may further avail itself of any legal or equitable rights and remedies which it may have under the Agreement or otherwise...*

65.    Accordingly, this Court should issue an immediate Temporary Restraining Order for a period of at least fourteen (14) days or until this Court can conduct a hearing and consider Russo's Application for Temporary Injunction.

66.    After conducting a hearing, evaluating the evidence presented and considering Russo's Application for Temporary Injunction, this Court should then issue a Temporary Injunction prohibiting Defendants from taking the following actions:

a.    using the trade name "New York Pizzeria" and/or "Russo's New York Pizzeria" and/or "Russo's" name in any signage, menus or other advertising;

b. using any of Russo's trade secrets or trade dress in Defendants' Pearland Location (including but not limited to, Russo's trade dress, appearance, look, artwork, recipes, ingredients and similar menu items);

c. operating the Pearland Location as a pizzeria, which includes offering pizza, pasta, soups and salads, and featuring the overall New York Pizzeria concept, with similar décor or similar menu items;

d. operating, either directly or indirectly, for themselves or through, on behalf of, or in conjunction with, any person, persons, or legal entity, own, maintain, operate, engage in, be employed by, or have any interest in any restaurant business featuring the overall New York Pizzeria concept, with similar décor or similar menu items to Russo's restaurants within a five (5) mile radius of the Pearland Location, or within a five (5) mile radius of any other Russo's restaurant in existence.

67.     This Court should also then enter a Temporary Injunction against Defendants and order Defendants to immediately turnover, assign, transfer or deliver to Russo's:

a. All Russo's training manuals and franchisee materials;
b. All documentation, print materials, paper products, proprietary products and information that contains the Russo's or New York Pizzeria logo;
c. All documentation and information related to the location's sales and revenue history;
d. All documentation and information related to the location's inventory order history;
e. All documentation and information related to the location's Russo's loyalty reward customer program history;
f. All rights to the location's facebook page and/or social media for the location;
g. All rights to the phone numbers (telephone and facsimile) of the location;
h. The rights to a directory listings of the location;
i. All rights to the facsimile numbers of the location;
j. All rights to the e-mail address for the location;
k. An itemized list of all materials, inventory, equipment and products;

l.   All files on any computer in your possession related to the location, its business, its sales history, its customers, its financial performance and all customer contact information; and

m.   Order Defendants to pay for Plaintiff's reasonable attorney's fees incurred in seeking injunctive relief.

## VI.

## ATTORNEYS' FEES

68.   Pursuant to the Lanham Act, Plaintiff is entitled to reasonable attorneys' fees and costs.

69.   Additionally, Russo's has found it necessary to employ an attorney to bring this suit against Defendants for breach of the Franchise Agreement.  Pursuant to Texas Civil Practice and Remedies Code §38.001 through §38.005, Russo's is entitled to recover its reasonable and necessary attorney's fees and costs associated with this action.

70.   Additionally, pursuant the Franchise Agreement, Defendants have already consented to Russo's rightful entitlement to recover its reasonable and necessary attorney's fees and costs associated with enforcing the terms of the Franchise Agreement and obtaining injunctive relief.

## VIII.

## ARBITRATION

71.   The Franchise Agreement between the parties contains a valid and enforceable Arbitration Agreement.  (See Exhibit B)  Following the Court's completion of the Temporary Injunction Hearing, Russo's requests that this Court abate this litigation to allow Plaintiff to proceed with its claims against Defendants in arbitration as provided for in the Franchise Agreement.  Plaintiff's purpose for filing this litigation with the Court is to obtain a Temporary Restraining Order and a Temporary Injunction, plus an award of money damages against

Defendants for the attorney's fees and expenses Plaintiff incurred in obtaining this injunctive relief.

WHEREFORE, PREMISES CONSIDERED, Russo's respectfully requests that Defendants be cited to appear and answer herein, that this Court issue a Temporary Restraining Order and Temporary Injunction as requested by Russo's, that Russo's recover reasonable attorney's fees and all costs and expenses incurred to obtain injunctive relief, and such other and further relief to which Plaintiff may show itself justly entitled to receive.

Respectfully submitted,

Joseph J. Hroch, TBN 24000647
USDC Southern District of Tx Bar #28099
12821 Industrial Road
Houston, Texas 77015
Telephone: (713) 636-8741
Facsimile:  (713) 636-8841

***Attorney for Plaintiff***